## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                             Cr. No. 17-2240 JAP

GLENROY HEYWOOD,

    Defendant.

### MEMORANDUM OPINION AND ORDER

On July 9, 2020, Defendant Glenroy Heywood filed a MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) ("Motion") (Doc. 108).[1]  Defendant requests a sentence reduction to time served or, alternatively, release to home confinement for a period equal to his remaining term of incarceration.  After reviewing the briefings, the prison and medical information, and the arguments of counsel, the Court will deny Defendant's Motion.

### I.    FACTS

On May 1, 2018, the Government filed an Information charging Defendant with Obstructing or Attempting to Obstruct Enforcement of the Child Sex Trafficking Statute in violation of 18 U.S.C. § 1591(d).  Information (Doc. 66) at 1.  On that same day, Defendant pleaded guilty to the one-count Information.  Plea Agreement (Doc. 68).  After an acceptance of responsibility adjustment, Defendant's offense level was 23 and his criminal history category was I.  In the United States Sentencing Guidelines ("U.S.S.G."), this offense level and criminal history combination suggests a sentencing range of 46 to 57 months.  The Court granted a downward

---

[1] The Motion is fully briefed.  *See* UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A), ("Response") (Doc. 109); DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE, ("Reply") (Doc. 110).

variance and sentenced Defendant to 24 months (2 years) imprisonment followed by a term of 10 years supervised release.  Defendant began serving his sentence at FCI Englewood in Littleton, Colorado, on June 3, 2019.  His projected release date to a halfway house is November 13, 2020.

Defendant submitted an administrative request for compassionate release to his warden on March 29, 2020, requesting release based on his "significant chronic diseases that put [him] at very high risk of mortality if [he] contract[s] COVID-19."  Mot., Letter to Warden (Doc. 108-1) at 1.  Defendant is a 57-year-old male who has been diagnosed with hypertension, congestive heart failure, and chronic kidney disease.  On May 18, 2020, the warden denied the request because Defendant's "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [his] sentence."  Mot., Ex. 2 (Doc. 108-2).

## II.   LEGAL STANDARD

After a court has imposed a sentence, it may modify the sentence only on the narrow grounds delineated in 18 U.S.C. § 3582.  One avenue for modification is "compassionate release."  Until the First Step Act of 2018 ("FSA") was enacted on December 21, 2018, only the BOP could review an inmate's request for compassionate release.  *See* FSA, PL 115-391, December 21, 2018, 132 Stat. 5194.  The FSA amended § 3582(c)(1)(A) to permit an inmate to bring a motion in federal court.  The purpose behind the amendment is indicated in its subtitle, which states that it is intended to "increase[e] the use and transparency of compassionate release."  *Id.* § 603(b)(1).  The inmate may file a motion only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A); *see also* FSA, PL 115-391, 132 Stat. 5194, § 603(b)(1).

Two circumstances permit a court to modify a term of imprisonment under § 3582(c)(1)(A).  The one applicable here, § 3582(c)(1)(A)(i) indicates that compassionate release

is established when "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).[2]   The policy statement for compassionate release is in § 1B1.13. U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018).

The text of § 1B1.13 provides that a defendant must show three things to establish his eligibility for sentence modification: 1) "extraordinary and compelling reasons;" 2) the defendant "is not a danger to the safety of any other person or to the community;" and 3) and "the reduction is consistent with this policy statement."   §1B1.13(1)-(3); *see, e.g., United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (defendant bears burden to show reduction is warranted under Section 3582(c)(2)); *United States v. Edington*, No. 19-CR-00174-REB-1, 2020 WL 2744140, at *4 (D. Colo. May 27, 2020) (same); *United States v. Bright*, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) ("extraordinary and compelling" standard imposes a heavy burden on a defendant seeking relief under Section 3582(c)(1)(A)).

The application notes for § 1B1.13 offer four definitions of "extraordinary and compelling circumstances."   § 1B1.13 cmt. n.1(A)-(D).   Defendant relies on the definitions found in 1(D), Other Reasons.   Under 1(D), compassionate release may be appropriate for "an extraordinary and compelling *reason other than or in combination with*, the reasons described in subdivisions (A) through (C)." *Id.* cmt. 1(D) (emphasis added).   These reasons include that the Defendant is (1) "suffering from a serious physical or medical condition," (2) "suffering from a serious functional or cognitive impairment," or (3) "experiencing deteriorating physical or mental health because of the aging process." *Id.* cmt. 1(A).   The underlying reason must "substantially diminish[] the ability

---

[2] A defendant also may be eligible for compassionate release under § 3582(c)(1)(A) (ii) if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g)." Defendant does not argue that § 3582(c)(1)(A)(ii) is applicable here.

of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

## III.   ANALYSIS[3]

### A.   *Defendant is not Eligible for Compassionate Release*

To be eligible for compassionate release Defendant must show: 1) extraordinary and compelling reasons; 2) he is not a danger to the safety of any other person or to the community; and 3) reduction is consistent with the policy statement. Here, Defendant fails to carry his burden on all three elements.

#### 1)   *Extraordinary and Compelling Reasons*

Defendant argues that his age, ethnicity,[4] and three underlying health conditions, which consist of hypertension, congestive heart failure, and chronic kidney disease, establish an extraordinary and compelling reason for compassionate release during the ongoing global pandemic. Mot. at 14. Specifically, Defendant asserts that his increased vulnerability to COVID-19, the number of infections at FCI Englewood, and the rising cases in Littleton, Colorado, warrant a sentence reduction under U.S.S.G. § 1B1.13 cmt. n.1(D). *Id.* In opposition, the Government contends that the low number of positive inmates at FCI Englewood combined with Defendant's health conditions are not sufficiently extraordinary and compelling to entitle him to compassionate release. Resp. at 8. The Government also maintains that Defendant's underlying health conditions

---

[3] Defendant has fully satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A), *see* Mot. Exs. 1–2, and the Government does not contend that the Court lacks jurisdiction to consider the Motion.

[4] Defendant asserts that "minorities are at a greatly increased risk of hospitalization from COVID-19." Mot. at 13. Defendant relies on data from the CDC for this proposition. This argument, however, fails to account for the data's underlying conclusion for the disparity between races. "Race and ethnicity are risk markers for other underlying conditions that impact heath—including socioeconomic status, access to health care, and increased exposure to the virus due to occupation." Centers for Disease Control and Prevention, COVID-19 Cases, Hospitalizations, and Death by Race/Ethnicity (https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html) (last accessed August 19, 2020). Being that Defendant is an experienced physician and is incarcerated, the underlying risk markers do not apply.

would not individually or collectively qualify as extraordinary and compelling circumstances under U.S.S.G. § 1B1.13 cmt. n.1(A)–(B).  *Id.* at 9. [5]  Therefore, granting Defendant's Motion would allow relief based on generalized COVID-19 fears and speculation.  *Id.* at 10.  Defendant fails to establish extraordinary and compelling circumstances for the reasons that follow.

As a 57-year-old diagnosed with hypertension, congestive heart failure, and chronic kidney disease, Defendant is at an increased risk for COVID-19 complications. [6]  The Government does not contest this.  But as the government rightfully argues, the BOP has taken significant measures to prevent the spread within the prison system, which include limiting inmates' movements and preventing congregate gatherings within the facility, eliminating visitation, and increasing screening of staff, inmates, and a limited number of essential contractors allowed on site. [7]  FCI Englewood reflects these efforts.  As of August 18, 2020, FCI Englewood has only five *active* cases and five inmates have recovered.  The total number of positives (10) represent approximately 1% of the total prison population (984). [8]  Only one staff member at FCI Englewood has tested positive, and that individual has since recovered. [9]  Lastly, no inmate or staff tests are pending. [10] Thus, Defendant's assertion that his underlying conditions warrant release from FCI Englewood because it presents an imminent risk of infection, or that staff to inmate transmission poses an unjustifiable risk, is speculative at best.  *See United States v. Raia*, 954 F.3d 594, 597 (3rd Cir.

---

[5] The Court need not address every argument that the Government makes in opposition to Defendant's Motion.  Based on the very small number of infections at FCI Englewood, Defendant cannot establish this element.

[6] *See* Centers for Disease Control and Prevention, People with Certain Medical Conditions (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html)   (last visited August 19, 2020); *see also* Centers for Disease Control and Prevention, Older Adults (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html) (last accessed August 19, 2020).

[7] *See* BOP, Implementing Modified Operations (https://www.bop.gov/coronavirus/covid19_status.jsp) (last accessed August 19, 2020)

[8] *See* BOP, COVID-19 Dashboard (https://www.bop.gov/coronavirus/) (last accessed August 19,2020); FCI Englewood Facility Page (https://www.bop.gov/locations/institutions/eng/) (last accessed August 19, 2020).

[9] *See id.*

[10] *See id.*

2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." ); *see also Carter v. Santa Fe Adult Det. Ctr.*, No. CV 20-00271 RB/GJF, 2020 WL 1550888, at *2 (D.N.M. Apr. 1, 2020) ("[A] prisoner is not entitled to release or transfer based solely on generalized COVID-19 fears and speculation.").

The relevant circumstances specific to Defendant establish that he faces an attenuated risk of infection because FCI Englewood has sufficiently deterred COVID-19 within the facility, it has implemented adequate preventative measures to ensure the health and safety of its inmates, and the number of infections remain low.[11]   Consequently, Defendant has not established that extraordinary and compelling reasons justify a sentence reduction under U.S.S.G. § 1B1.13 cmt. n.1(D).   The Court, however, invites Defendant to renew his request should conditions substantially change at FCI Englewood.

2) *Defendant is a Danger to the Community*

Before reducing or modifying a defendant's sentence, a court must consider whether a defendant is dangerous to the community.  Factors to consider are: the nature and circumstances of the inmate's offense, the inmate's criminal history, length of sentence and time served, the inmate's current age, the inmate's age at time of offense and sentence, the inmate's release plans, and whether release would minimize the seriousness of the offense.  Policy § 7.

Although Defendant's criminal history includes only the offense for which he is currently incarcerated, that offense, Obstructing or Attempting to Obstruct Enforcement of the Child Sex Trafficking Statute, is a serious crime.  Specifically, Defendant used the internet to solicit a commercial sex act from an advertisement posted online by a female claiming to be eighteen years

---

[11] Since filing his Motion on July 9, 2020, the *total* confirmed cases at FCI Englewood increased from six to ten.

of age and, when informed that the female was in fact only fifteen years old, he still agreed to meet her, nonetheless.  See PLEA AGREEMENT (Doc. 68) at 3-4.  Once law enforcement officers confronted Defendant at the scene, he attempted to flee.  Id. at 4.  Defendant is a danger to the community because the nature and circumstances of the offense outweigh any positive equities in his favor.

### 3)  The Policy Statement

As to Defendant's request for *home confinement*, granting such relief would be inconsistent with this Court's authority and BOP policy.  The CARES Act gives the BOP the authority to put in home confinement a statutorily ineligible inmate, if the inmate is, by age or medical condition in accordance with CDC guidelines, particularly vulnerable to the COVID-19 virus.  CARES Act, Pub. L. 116-136, Div. B, Title II § 12003(b)(2).  The CARES Act, however, does not grant a Court authority to order home confinement.   *See, e.g., United States v. Hammons,* No. CIV-20-789-F, 2020 WL 4741916, at *1 (W.D. Okla. Aug. 14, 2020); *United States v. Erickson*, No. 2:17-CR-591 DB, 2020 WL 4732125, at *4 (D. Utah Aug. 14, 2020)*; United States v. Candelaria,* No. 1:04-CR-75 WJ, 2020 WL 4698510, at *2 (D.N.M. Aug. 13, 2020) (citing *McKune v. Lile*, 536 U.S. 24, 39 (2002)); *United States v. Machuca-Quiintana,* 2020 WL 3047596, at *5 (D. Kan. June 8, 2020)*; United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at * 5 (D. Kan. Apr. 16, 2020) (citing *United States v. Engleson*, No. 13-cr-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020)); *see also United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) ("The CARES Act authorizes the BOP—not courts—to expand the use of home confinement.").

Furthermore, placing Defendant on home confinement would be inconsistent with BOP policy.  Attorney General William P. Barr issued a memorandum on March 26, 2020, directing the Director of the BOP to "prioritize the use of [the Director's] various statutory authorities to grant

home confinement for inmates," considering "the totality of circumstances for each individual inmate, the statutory requirements for home confinement" and various discretionary factors. *See* Memorandum for the Director of Bureau of Prisons from the Attorney General at 1–2.[1]   This memorandum has since been supplemented by the BOP to provide updated guidance and direction. *See* Resp., Ex. 1 (Home Confinement Memorandum dated May 8, 2020).   Notably, under both Attorney General Barr's memorandum and the May 28, 2020, supplement, sex offenses render an inmate ineligible for home detention.   Of course, BOP policy does not determine Defendant's eligibility for a *sentence reduction*, but it is a relevant factor that further weighs against granting him such relief.   The Court must deny Defendant's request for release to home confinement.

### B.   The § 3553(a) factors do not support modification of Defendant's Sentence

Defendant argues here that the "overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents." Mot. at 19.   In addition, Defendant contends that he is unlikely to reoffend because "he has no previous criminal history, has never engaged in acts of violence, and is presently housed in a low-security facility." *Id*. at 20.   These arguments are unconvincing.

Reducing Defendant's 24-month term of imprisonment to time served is unsupported by the factors in 18 U.S.C. § 3553(a).   These factors include: "the nature and circumstances of the offense," "the history and characteristics of the defendant," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." § 3553(a).[12] As discussed above, the nature and circumstances of the offense do not warrant a sentence reduction.   But even then, this Court still gave Defendant a significant downward variance during

---

[12] Defendant fails to provide the court with authority that suggests COVID-19 is a factor relevant to the Court's consideration of the § 3553(a) factors.   In addition, Defendant's underlying medical conditions preceded his term of incarceration.   *See* Mot., Exs. 3–4.   Thus, the Court has already considered his underlying medical conditions when it sentenced him.

sentencing.   Therefore, keeping Defendant incarcerated for the remainder of his sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter similar criminal conduct by him or others similarly situated or inclined.

## IV.   CONCLUSION

Defendant has failed to carry his burden under Section 3582(c)(1)(A).

IT IS ORDERED:

1. Defendant's MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) (Doc. 108) is DENIED without prejudice;

2. Defendant may file an Amended Motion for Compassionate Release if FCI Englewood experiences a significant spike in COVID-19 infections; and

3. Defendant may file by September 1, 2020, a motion requesting removal of the "residential re-entry center" condition of supervised release that is scheduled to begin on November 13, 2020, if Defendant is concerned about the potential COVID-19 infection risk that living at a residential re-entry center presents.

SENIOR UNITED STATES DISTRICT JUDGE